ORIGINAL

# In the United States Court of Federal Claims

No. 17-18C
Filed August 24, 2017
NOT FOR PUBLICATION

**FILED**

**AUG 2 4 2017**

U.S. COURT OF
FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| MAHER SOLIMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | *Pro Se*; RCFC 12(b)(1); RCFC 12(b)(6); |
| v. | ) | Subject-Matter Jurisdiction; Failure to |
| | ) | State a Claim. |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Maher Soliman*, San Francisco, CA, plaintiff *pro se*.

*Shari A. Rose*, Senior Trial Counsel, *Deborah A. Bynum*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

### I. INTRODUCTION

Plaintiff *pro se*, Maher Soliman, brought this action seeking to recover damages and back pay for the government's alleged breach of an employment contract by and between plaintiff and the United States Department of State (the "State Department"). The government has moved to dismiss this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to Rules 12(b)(1) and (b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, the Court **GRANTS** the government's motion to dismiss.

7017 1450 0000 1346 2977

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

Plaintiff *pro se*, Maher Soliman, is a former State Department employee who served as a Rule of Law Senior Advisor in the State Department's Iraqi Transition Assistance Office ("ITAO").  Compl ¶ 9.  Following the termination of his employment, plaintiff filed an employment discrimination and breach of contract lawsuit against the State Department in the United States District Court for the District of Columbia.  *Id.* ¶ 17.  The district court subsequently transferred plaintiff's breach of contract claim to this Court.  *Id.* ¶ 18.  In this case, plaintiff seeks to recover, among other things, back pay and damages as compensation for the alleged breach of this employment contract.  Compl. at Prayer for Relief.

#### 1.  Plaintiff's Employment History And The ITAO

In April 2009, plaintiff applied for a Rule of Law Senior Advisor position with the State Department.  *Id.* ¶ 9.  The position was to be based in Iraq and located within the ITAO–a temporary office created by executive order to support the United States in "concluding remaining large infrastructure projects expeditiously in Iraq, in facilitating Iraq's transition to self-sufficiency, and in maintaining an effective diplomatic presence in Iraq."  Exec. Order No. 13,431, 72 Fed. Reg. 26,709 (May 8, 2007).

All ITAO personnel are hired pursuant to 5 U.S.C. § 3161, which authorizes the appointment of personnel to "temporary organizations" within the government.  *Id.*; 5 U.S.C. § 3161(a) (2012); Def. Mot. at 4.  On April 30, 2009, the State Department informed plaintiff by letter that he had been accepted for the Rule of Law Senior Advisor position.  *See* Pl. Ex. D.  This letter states that plaintiff will receive a "temporary excepted appointment" to the State Department and that the appointment would begin on May 14, 2009.  *Id.*

On May 14, 2009, the Secretary of State issued a Standard Form 50 entitled "Notification of Personnel Action" to plaintiff.  Def. Ex. A.  The form provides that the nature of the action is

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl.") and the exhibits thereto ("Pl. Ex."), the government's motion to dismiss ("Def. Mot.") and the appendix thereto ("Def. App."); and plaintiff's response and opposition to the government's motion to dismiss ("Pl. Resp.").

"Exc Appt NTE 06-13-2010," indicating that plaintiff will receive an excepted appointment for a period that would not exceed June 13, 2010. *Id.*; Pl. Ex. D at 1. The Standard Form 50 also provides in the "Remarks" section that "your appointment may be terminated at any time." *Id.*

Several months after plaintiff began work, the State Department terminated plaintiff's employment, effective December 2, 2009. Compl. ¶ 14; Pl. Ex. E. In connection with the termination, the State Department issued another Standard Form 50 on December 2, 2009. Pl. Resp. at Ex. F. This form provides that the nature of the action is a "termination," and the form also contains an explanation of post-termination benefits and procedures. Def. Ex. A.

### 2. Plaintiff's EEO Claim And District Court Litigation

In early 2010, plaintiff brought an unsuccessful claim against the State Department before the Equal Employment Opportunity Commission alleging employment discrimination in connection with the termination of his employment. *See Soliman v. Kerry*, 177 F. Supp. 3d 182, 187 (D.D.C. 2014). On February 4, 2013, plaintiff filed an employment discrimination and breach of contract action against the government challenging the termination of his employment in the United States District Court for the District of Columbia. *See Soliman*, 177 F. Supp. at 189. The district court dismissed some of plaintiff's claims in that case, including the breach of contract claim, and the district court ultimately granted the government's motion for summary judgment on the remaining employment discrimination claims. *Soliman*, 177 F. Supp. 3d at 184-85.

After plaintiff appealed to the United States Court of Appeals for the District of Columbia Circuit, the D.C. Circuit vacated the district court's decision and remanded the matter to the district court with instructions to transfer plaintiff's breach of contract claim to this Court. *Soliman v. Kerry*, No. 16-5155, 2016 WL 6238578 (D.C. Cir. Sept. 22, 2016). Plaintiff commenced this action on January 23, 2017.

### B. Procedural Background

Plaintiff filed the transfer complaint in this matter on January 23, 2017. *See generally* Compl. On March 27, 2017, the government filed a motion to dismiss the complaint. *See generally* Def. Mot.

On April 24, 2017, plaintiff filed a response and opposition to the government's motion to dismiss. *See generally* Pl. Resp. On May 11, 2017, the government filed a reply in support of its motion to dismiss. *See generally* Def. Reply. On May 18, 2017, the Court granted the government leave to file a corrected reply in support of its motion to dismiss. *See* Order Granting Leave for Motion for Leave to File Corrected Reply and Supplemental Appendix. On May 30, 2017, plaintiff filed a request for judicial notice by leave of the Court. *See* Plaintiff's Request for Judicial Notice.

These matters having been fully briefed, the Court resolves the pending motion to dismiss.

## III.   LEGAL STANDARDS

### A. *Pro Se* Litigants

Plaintiff is proceeding in this matter *pro se*. The Court recognizes that parties proceeding *pro se* are granted greater leeway than litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers"). Nonetheless, "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." *Demes v. United States*, 52 Fed. Cl. 365, 369 (2002). And so, the Court may excuse ambiguities in plaintiff's complaint, but the Court does not excuse the complaint's failures. *See Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

The Supreme Court has also recognized that, "[e]ven a skilled lawyer who represents himself is at a disadvantage in contested litigation," because "[h]e is deprived of the judgment of an independent third party in framing the theory of the case . . . and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." *Kay v. Ehrler*, 499 U.S. 432, 437 (1991). And so, where, as is the case here, a *pro se* plaintiff is an attorney, the Court may afford plaintiff the same leeway customarily granted to all *pro se* plaintiffs. *Abbas v. United States*, 124 Fed. Cl. 46, 50 (2015); *but see Harrison v. United States*, 120 Fed. Cl. 533, 536 n.1 (2015).

### B. RCFC 12(b)(1)

When deciding a motion to dismiss for lack of subject-matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); RCFC 12(b)(1). Plaintiff bears the burden of establishing subject-matter jurisdiction, and must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). And so, should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Specifically, the Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan,* 424 U.S. 392, 398 (1976). And so, to come within the jurisdictional reach and waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). If the Court finds that the source of law alleged is not money-mandating, the Court must dismiss the case for lack of jurisdiction. *Id.* at 1173; RCFC 12(b)(1).

### C. RCFC 12(b)(6)

Similarly, when deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), this Court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the non-movant's favor. *Erickson*, 551 U.S. at 94; *see also* RCFC 12(b)(6). To survive a motion to

dismiss pursuant to RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).   And so, when the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678.   On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity" and determine whether it is plausible, based upon these facts, to find against defendant. *Id.* at 679.

### D.   Contracts With The United States

The Tucker Act grants this Court jurisdiction to consider claims based "upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).   The Court does not, however, possess jurisdiction to consider claims against the United States "based on contracts implied in law." *United States v. Mitchell*, 463 U.S. 206, 218 (1983) (citing *Merritt v. United States*, 267 U.S. 338, 341 (1925)); *Aboo v. United States*, 86 Fed. Cl. 618, 626 *aff'd*, 347 F. App'x 581 (Fed. Cir. 2009).   And so, to bring a valid contract claim against the United States in this Court, plaintiff must establish either an express or implied-in-fact contract with the government. *Aboo*, 86 Fed. Cl. at 626.   Such a contract claim must also be for "actual, presently due money damages . . . ." *King v. United States*, 395 U.S. 1, 3 (1969); *see also Speed v. United States*, 97 Fed. Cl. 58, 66 (2011).

In addition, plaintiff bears the burden of proving the existence of a contract with the United States, and plaintiff must show that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights." *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003).   To establish the existence of either an express or implied-in-fact contract with the United States, a plaintiff must show:  (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990).   A government official's authority to bind the United States must be express or implied. *Roy v. United States*, 38 Fed. Cl. 184, 187-89, *dismissed*, 124 F.3d 224 (Fed. Cir. 1997).   And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents." *Id.* at 187.

In this regard, a government official possesses express actual authority to bind the United

States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009) *aff'd*, 385 F. App'x 987 (Fed. Cir. 2010) (internal citations omitted); *see also El Centro*, 922 F.2d at 820. On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2006) (citations omitted); *see also Aboo*, 86 Fed. Cl. at 627 ("[I]mplied authority is restricted to situations where 'such authority is considered to be an integral part of the duties assigned to a [g]overnment employee.'" (quoting *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989))). In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority. *Janowsky v. United States*, 133 F.3d 888, 891–92 (Fed. Cir. 1998).[2]

It is also well-established that Tucker Act jurisdiction may be based up on an employment contract. *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 735 (1982). But, it is presumed that, "absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985). And so, the Federal Circuit has held that, if an individual's "employment was by 'appointment,' a breach of contract action against the government would be precluded." *Hamlet v. United States*, 873 F.2d 1414, 1417 n.5 (Fed. Cir. 1989). Given this, a federal employee's "relationship with the government cannot be simultaneously governed by both an appointment and a contract." *Collier v. United States*, 56 Fed. Cl. 354, 356 (2003).

---

[2] Ratification may take place at the individual or institutional level. *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 653-54 (2006). Individual ratification occurs when a supervisor: (1) possesses the actual authority to contract; (2) fully knew the material facts surrounding the unauthorized action of his or her subordinate; and (3) knowingly confirmed, adopted, or acquiesced to the unauthorized action of the subordinate. *Id.* at 654 (quoting *Leonardo v. United States*, 63 Fed. Cl. 552, 560 (2005)). In contrast, institutional ratification occurs when the government "seeks and receives the benefits from an otherwise unauthorized contract." *Id.*; *see also Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).

### E. The Back Pay Act

Lastly, the Back Pay Act allows certain federal employees to seek restoration of employment benefits which have been improperly denied. The Back Pay Act provides, in relevant part, that:

> (1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—
>
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—
>
> (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period . . . .

5 U.S.C. § 5596(b)(1) (2012). The Back Pay Act has generally been described as a money-mandating provision. *See Bowen v. Massachusetts,* 487 U.S. 879, 907 n.42, (1988). But, the Federal Circuit has held that this statute "is merely derivative in application; it is not itself a jurisdictional statute." *United States v. Connolly,* 716 F.2d 882, 887 (Fed.Cir.1983); *see also Contreras v. United States*, 64 Fed. Cl. 583, 592 n.9 (2005) (discussing *Connolly*); *Carroll v. United States*, 67 Fed. Cl. 82, 88 (2005).

The Federal Circuit has also held that the Back Pay Act only mandates the payment of money when a plaintiff identifies an "applicable law, rule, regulation, or collective bargaining agreement" which has been violated, leading to a reduction in pay. *Worthington v. United States,* 168 F.3d 24, 26 (Fed. Cir. 1999) (discussing *Connolly*) ("The Back Pay Act is such a 'money-mandating' statute when based on violations of statutes or regulations covered by the Tucker Act."); *Carroll,* 67 Fed. Cl. at 85. And so, the Back Pay Act by itself, cannot serve as the exclusive basis for establishing Tucker Act jurisdiction. *Carroll*, 67 Fed. Cl. at 85.

IV.   **LEGAL ANALYSIS**

**A. The Court Does Not Possess Jurisdiction To**
**Consider Plaintiff's Breach Of Contract Claim**

As an initial matter, the Court does not possess subject-matter jurisdiction to consider plaintiff's breach of contract claim, because plaintiff fails to establish the existence of a valid contract with the government. It is well-established that the Tucker Act grants this Court jurisdiction to consider claims based "upon any express or implied contract with the United States" and that Tucker Act jurisdiction may be based upon an employment contract. 28 U.S.C. § 1491(a)(1); *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 735 (1982). But, the Federal Circuit has also held that, "absent specific legislation, [it is presumed that] federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985). And so, if plaintiff's "employment was by 'appointment,' a breach of contract action against the government would be precluded" in this case. *Hamlet v. United States*, 873 F.2d 1414, 1417 n.5 (Fed. Cir. 1989); *Charnetski v. United States*, 111 Fed. Cl. 185, 188 (2013).

This Court has also recognized that it must analyze the relevant statutes and regulations in light of other evidence presented to determine how an individual is employed by the government. *Charnetski*, 111 Fed. Cl. at 188. And so, if the Court determines during this analysis that a federal employee serves by appointment, the Court must dismiss the employee's breach of contract claim for lack of subject-matter jurisdiction. *Id.* at 188-89.

The undisputed facts in this case demonstrate that plaintiff's employment with the ITAO was by appointment rather than pursuant to an employment contract. First, as the government correctly observes in its motion to dismiss, plaintiff points to no facts to establish that he was employed pursuant to a contract with the government. Def. Mot. at 8; *see also* Compl. In fact, the undisputed facts in this case show that plaintiff's employment was by appointment rather than pursuant to an employment contract. *See* Pl. Resp. at 17; Def. Mot. at 7.

In this regard, it is undisputed that the advertisement for the position that plaintiff ultimately accepted at the ITAO—which plaintiff attaches as Exhibit B to the complaint—refers to the position as a "full time temporary excepted appointment." Pl. Ex. B at 1. It is also undisputed that a letter from the State Department to plaintiff, dated April 30, 2009, confirming

9

plaintiff's employment with the ITAO—which plaintiff also attaches to Exhibit C to the complaint—similarly refers to this position as a "temporary excepted appointment." Pl. Ex. C.  In addition, a November 29, 2009, State Department letter to plaintiff terminating plaintiff's employment with ITAO—which plaintiff attaches as Exhibit E to the complaint—also refers to the position as a "temporary appointment".  And so, plaintiff's own documents show that he had been employed with the ITAO by appointment.

The fact that plaintiff had been employed by appointment is further reinforced by the personnel forms executed at the time of plaintiff's hiring.  The Standard Form-50 that the State Department issued on May 14, 2009, when plaintiff commenced his employment with ITAO provides that the nature of the action taken is "Exc Appt NTE 06-13-2010".  Def. App. at A1.  Plaintiff does not dispute that such a designation means that the position at issue involves an excepted appointment for a period of time not to exceed June 13, 2010.  *See generally* Pl. Resp.  The remarks section of this form also provides that, "your appointment may be terminated at any time".  *Id.*  Plaintiff does not dispute this salient fact.[3]  *See generally* Pl. Resp.  And so, the undisputed facts in this case reflect the appointive nature of plaintiff's employment with the ITAO.  *See Piper v. United States*, 90 Fed. Cl. 498, 505 (2009) (considering a similarly worded SF-50 and finding that "[t]he language of the SF–50 explicitly reflects the appointive nature of plaintiff's employment.").

Plaintiff also fails to identify any legislation that would overcome the presumption that his employment was by appointment.  As the government notes in its motion to dismiss, the ITAO has been established pursuant to Executive Order 13,431, which President George W. Bush signed on May 8, 2007.  Def. Mot. at 4; Exec. Order No. 13,431, 72 Fed. Reg. 26,709 (May 8, 2007).  Executive Order 13,431 establishes ITAO as a temporary organization "in accordance with section 3161 of title 5, United States Code".  Notably, Section 3161 provides that the heads of such organizations "may *appoint* persons to positions of employment" and refers to such

---

[3] In his response and opposition to the government's motion to dismiss, plaintiff alleges that the May 14, 2009, SF-50 form set forth in the appendix to the government's motion to dismiss is a "forged document," because this form differs from the SF-50 form, dated December 2, 2009, which plaintiff attaches as an exhibit to his response brief.  Pl. Resp. at 13-14.  But, as the government explains in its reply brief, the State Department issued the former document at the time plaintiff commenced his employment and the later document upon plaintiff's termination.

employment as a "period of appointment". 5 U.S.C. §§ 3161(b)(1)-(2), (d)(1) (emphasis supplied). Given this, it is not surprising that plaintiff acknowledges in his opposition to the government's motion to dismiss that he was a "civilian employee serving by appointment." Pl. Resp. at 17. And so, plaintiff simply has not overcome the presumption that he derived the benefits and emoluments of his position with the ITAO from appointment, rather than from any contractual relationship with the government.

Because the undisputed facts in this case show that plaintiff's employment with the ITAO was by appointment, plaintiff's breach of contract action against the government is jurisdictionally precluded. *Charnetski v. United States*, 111 Fed. Cl. at 188 (holding that a federal employee's "relationship with the Government cannot be simultaneously governed by both an appointment and a contract."). And so, the Court must dismiss this claim. RCFC 12(b)(1).

### B. Plaintiff Fails To State A Plausible Civilian Pay Claim

To the extent that plaintiff alleges a back pay claim based upon a money-mandating source of law, plaintiff also fails to state a plausible claim for relief in the complaint. And so, the Court must dismiss plaintiff's back pay claim pursuant to RCFC 12(b)(6).

In his response and opposition to the government's motion to dismiss, plaintiff alleges for the first time that he is entitled to recover back pay from the government for the period December 3, 2009 to June 13, 2010, pursuant to the Back Pay Act. Pl. Resp. at 17-24. To support this claim, plaintiff cites a litany of pay statutes, including 5 U.S.C. § 5596 (the Back Pay Act), 5 U.S.C. § 5928 (Danger Pay Allowance), 5 U.S.C. § 5925 (Post Differential), 5 U.S.C. § 5305 (Retention Bonus), 5 U.S.C. § 5924 (Post Allowance), 5 U.S.C. § 5542 (Overtime Pay), and 5 U.S.C. § 5755 (Supervisory Differentials). *Id.*

Generally, this Court possesses subject-matter jurisdiction to consider a claim brought under the Back Pay Act, when a plaintiff identifies an "applicable law, rule, regulation, or collective bargaining agreement" which has been violated, leading to a reduction in pay. 5 U.S.C. § 5596(b)(1); *see Worthington v. United States,* 168 F.3d 24, 26 (Fed. Cir. 1999) (discussing *Connolly*) ("The Back Pay Act is such a 'money-mandating' statute when based on violations of statutes or regulations covered by the Tucker Act."); *Carroll*, 67 Fed. Cl. at 85.

But, plaintiff must show that he is entitled to receive the pay that he seeks. *Carroll*, 67 Fed. Cl. at 85.

When read in the light most favorable to plaintiff, the complaint shows that plaintiff fails to state a plausible claim for back pay. First, as the government correctly observes in its reply brief, plaintiff does not alleged a back pay claim in the complaint. Def. Mot. at 7. Rather, plaintiff alleges in the complaint that the government breached an employment contract with plaintiff, by terminating his employment in December 2009 "without cause or due process". Compl. at ¶ 14.

Plaintiff also does not allege that he was improperly compensated during the period of his government employment in the complaint. To the contrary, plaintiff acknowledges in the complaint that he received "a salary of $102,721.00 per annum; 35% salary foreign post differential pay; 30% danger pay; [and] "30 hours [sic] weekly pay in mandatory overtime," during the period of his employment with the ITAO. Compl. at ¶ 12. And so, plaintiff does not allege in the complaint that he is entitled to back pay for the period of time that he was employed with the ITAO.

Rather, a plain reading of the complaint makes clear that plaintiff seeks to recover pay for the period after December 2, 2009, during which he was *not* a government employee. Compl. at ¶ 14-15. Even if plaintiff could establish that he is entitled to compensation under the pay statutes that he cites, plaintiff has not shown that he is entitled to receive such pay for the period after his government employment ceased. And so, plaintiff fails to state a plausible back pay claim in the complaint.

In addition, as the government correctly argues in its reply brief, plaintiff's reliance upon this Court's decision in *Adde v. United States*, 81 Fed. Cl. 415 (2008), to support his back pay claim is misplaced. Def. Mot. at 9-10. In *Adde*, the Court held that a plaintiff who alleged a claim for a post allowance under 5 U.S.C. 5924(1) stated a plausible claim for relief, because she had been employed by the government overseas during the period of time at issue and she may have "fulfilled the condition which [made] the allowance applicable." *Adde*, 81 Fed. Cl. at 419-21. But, unlike the plaintiff in *Adde*, there is no dispute that the plaintiff in this case was not employed by the government during the period of time that he seeks to recover back pay. Given this, *Adde* is a factually distinguishable from this case and does not aid plaintiff's claim.

Because plaintiff fails to state a plausible claim for back pay in the complaint, the Court must dismiss plaintiff's back pay claim pursuant to RCFC 12(b)(6).

## V.    CONCLUSION

In sum, when read in the light most favorable to plaintiff, the complaint shows that the Court does not possess subject-matter jurisdiction to consider plaintiff's breach of contract claim, because plaintiff has not established the existence of a valid contract with the government.   In addition, plaintiff fails to state a plausible back pay claim in the complaint, because he was not a government employee during the time period that he seeks to recover back pay.

And so, for the foregoing reasons, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the complaint.

The Clerk is directed to **ENTER** judgment accordingly.

No costs.


**IT IS SO ORDERED.**

LYDIA KAY GRIGGSBY
Judge